

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

FAGAN DICKSON
FIRST ASSISTANT

December 23, 1948

Hon. E. F. Campbell
County Attorney
Fisher County
Roby, Texas

Opinion No. V-756

Re: The legality of treat-
ing the area of the
receiving district as
including the area of
a district sending
scholastics under con-
tract for the purpose
of qualifying for
"sparse district" equal-
ization aid funds.

Dear Sir:

We refer to your recent letter concerning the
request of the Hobbs Independent School District (to
which has been contracted the scholastics of the Cotton-
wood Common School District in accordance with Article
VIII, H. B. 295, Acts 1947) to operate as eligible for
State aid under the third paragraph of Section I, of
Article I, H. B. 295.

In your attached letter from the superintendent
of the Hobbs District we are informed that the Hobbs I.
S. D. comprises 240 square miles. It has 251 scholastics
for the 1948-49 school year. It has a local school tax
rate of $1.50 on its $100.00 valuations. That, under
Article VIII of H. B. 295, it has contracted for the scho-
lastics of the Cottonwood District, this school year, as
it has in the past several years. The Cottonwood District
comprises 57 square miles, has six approved scholastics,
and has a local maintenance tax rate of 50 cents on the
$100.00 State and County valuations. Under the contract
arrangement the total area or territory that the Hobbs
I. S. D., the receiving district, will serve is 297 square
miles, and the total scholastics are 257, amounting to
less than one scholastic per square mile.

Query: May the territory of a sending district,
contracted in accordance with Art. VIII, H. B. 295, be
added to territory of the receiving district for the pur-
pose of qualifying the receiving district for state aid

under the sparsely settled provisions of paragraph 3 of Section 1, Article I, H. B. 295, Acts 1947?

Both the receiving district, Hobbs, and the sending district, Cottonwood, meet the local maintenance tax provisions of H. B. 295, and, we understand, both can show need for aid. Further, it is clear that the Hobbs district is eligible to receive State aid for which it can show need and also State aid on the sending district, Cottonwood, under the provisions of Article VIII, H. B. 295.

State Article VIII provides:

"Upon the agreement of the Board of Trustees of the districts concerned or on petition signed by a majority of the qualified voters of the district and subject to the approval of the County Superintendent and the State Superintendent, a district which may be unable to maintain a satisfactory school may transfer its entire scholastic enrollment of the entire district for one year to a school of higher rank. If the receiving school receives State aid, the scholastic census rolls of both schools shall be combined, the per capita apportionment shall be paid direct to the receiving school, all local taxes of the sending contracting district, except those taxes going to the interest and sinking fund, shall be credited to the receiving school by the Tax Collector as collected, and the teacher-pupil quota shall be based on the combined census total. If the receiving school is not a State aid school, the scholastic census rolls of both schools shall be combined, the per capita apportionment shall be paid direct to the receiving school, all local taxes of the sending contracting district except those going to the interest and sinking fund shall be credited to the receiving school by the Tax Collector as collected, and the sending contracting district will be eligible for as much salary aid as is necessary to supplement the State Available and Local Maintenance Funds, on the scholastics from the sending district attending a school in the receiving district, to cover

the approved cost of instruction per scho-
lastic in the receiving school, provided
that such approved cost shall not exceed
Twelve Dollars ($12) per month for five
(5) months for high school students or
Six Dollars ($6) per month for five (5)
months for elementary students." (Emphasis
added.)

This provision requires that if the receiv-
ing district receives State aid, the scholastic census
rolls of both schools shall be combined and the teacher-
pupil quota shall be based on the combined census total.
With respect to salary aid and the determination of the
teacher-pupil quota, we note that Section 1 of Article
III, H. B. 295, provides that State aid shall be allotted
upon the basis of one teacher for any number of students
of each race from 20 to 35 and one additional teacher for
each additional 30 scholastics or fractional part there-
of. Section 1 sets out other bases for calculation not
necessary here to consider.

Applying the provisions of Article VIII and
Article I herein noted to the Hobbs-Cottonwood fact sit-
uation, the combined census scholastic total being 257,
it is clear and undisputed that the Hobbs I. S. D. may
claim State salary aid for nine teachers. However, if
the Hobbs District can qualify legally under the eligi-
bility provisions found in that part of the third para-
graph of Section 1, Article I, H. B. 295, which reads:

". . . . school districts having a scho-
lastic population equivalent to one scholas-
tic per square mile or less and containing
one hundred (100) square miles or more in
area, _may be exempt_ . . . _from teacher pupil_
_quota requirement of this Act_, if it is so
recommended by the State Superintendent of
Public Instruction and approved by the Legis-
lative Accountant, for the purpose of main-
taining a high school of sixteen (16) or
more affiliated units with seven (7) _or more_
teachers; . . ." (Emphasis added.)

then it could receive State salary aid for eleven teachers,
provided the State Superintendent recommends same and ex-
empts it from the teacher-pupil quota provisions (Art. III)
of the Act with the approval of the Legislative Accountant.

The Hobbs District itself considered as a separate entity school district is not eligible for State aid under the sparsely settled provision above quoted. It has 251 scholastics; its territory comprises 240 square miles. It has a scholastic population of more than one per square mile. Nor is the Cottonwood District eligible thereunder for the reason it is not maintaining or operating such a designated school in its district.

Do, then, the eligibility provisions of H. B. 295 found in Section 1 of Article I, qualify the Hobbs District (by the simple expedient of contracting with another district under Article VIII of H. B. 295 which is comprised of considerable territory and but few scholastics) for State aid under the sparsely settled eligibility provision above quoted. We think not, nor do we believe the Act warrants such a construction.

Neither Section 1 of Article I nor Article VIII of H. B. 295 purports in anywise to authorize a consolidation of the two districts. Article VIII does not speak in terms of merging the territory of the sending district with that of the receiving district, but provides for the contract or the transfer of the scholastic enrollment. A. G. Opinion No. O-5911.

"Furthermore, . . . the article . . . merely deals with the transfer of school children and school funds from one district to another . . . and not in any way affecting or providing for consolidation of districts." Drake v. Yawn, 248 S. W. 726, 732, writ refused.

The transfer provisions of H. B. 295, Article VIII, do not attempt to qualify or make eligible a school district for State aid. On the contrary, it was clearly the intention of the Legislature that such transfer should not affect the status of the various districts with reference to aid from the Equalization Fund. The transfer provisions above referred to merely authorize the transfer or contract of the entire scholastics of a school district and its school funds and do not affect the eligibility or status of the various school districts concerned. Reports and Opinions of Attorney General, Volume 1934-36, page 157.

Conversely, under the facts under consideration herein, if the Hobbs district had fewer scholastics than

total square miles in its independent district and was eligible for state aid under the sparsely settled provisions of H. B. 295, third paragraph of Section 1 of Article I, and it then contracted for the scholastics of Cottonwood district under Article VIII, it would not have been rendered ineligible for State aid merely because the total square miles of the sending district when added with the square miles of the Hobbs district showed the Hobbs District was serving, under this arrangement, scholastics which numbered more than the total square miles in the combined districts.

Accordingly, your submitted inquiry is answered in the negative.

## SUMMARY

The territory of a sending school district, contracted under Article VIII, H. B. 295, Acts 1947, may not be added to the territory of a receiving district to qualify or render eligible the receiving district for State aid under the sparsely settled provisions of paragraph 3 of Section 1, Article I, H. B. 295. Drake v. Yawn, 248 S. W. 726, writ refused; Attorney General's Report, 1934-36, page 157.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By *Chester E. Ollison*

Chester E. Ollison
Assistant

CEO:bh:rt

APPROVED:

*Fagan Dickson*

FAGAN DICKSON
FIRST ASSISTANT
ATTORNEY GENERAL